Samuel BROWN, Appellant,

v.

STATE of Texas, Appellee.

No. 04–93–00569–CR.

Court of Appeals of Texas, San Antonio.

June 8, 1994.

Paul Stone, San Antonio, for appellant.

Margaret Fent, Asst. Cr. Dist. Atty., San Antonio, for appellee.

---

1. Both this case and the *Kyles* case involve the same prosecutor's office.

Before PEEPLES, LOPEZ and STONE, JJ.

## OPINION

STONE, Justice.

This is an appeal from a jury trial convicting Defendant of aggravated robbery with a deadly weapon in violation of TEX.PENAL CODE ANN. § 30.02 (Vernon 1989). Punishment was assessed at life in prison. On appeal Defendant contends that he was denied a fair trial, and that his right to a presumption of innocence was infringed, because he was required to wear a physical restraint in the courtroom. We disagree with Defendant's contentions, and therefore affirm the judgment of the trial court.

Prior to trial the State requested that Defendant be restrained in the courtroom, and Defendant objected. At a hearing held on the motion Deputy Spaulding, bailiff for the 187th District Court, testified that the policy of the sheriff's department was to use restraints on a prisoner with a life sentence, in capital offense cases, or when the prisoner presented an escape risk. It is undisputed that Defendant had prior convictions for which he had received two twenty year sentences and one life sentence. Deputy Spaulding testified that his superior officer had told him to use a leg brace on Defendant, and that the brace would not be visible to members of the jury. The brace was described as:

> [A] plastic brace with a slight bend in it that fits—it's split down the one side all the way. It has two leather straps and two velcro straps. It fits over the leg with the solid part behind the knee; the open part on the knee. It immobilizes the knee where it cannot bend.

Deputy Spaulding had no knowledge that Defendant presented an escape risk. The trial court ruled that the leg restraint would be worn during voir dire examination, and that the issue might be reexamined after jury selection. The court further stated as follows:

> All we're going to do is while this courtroom is crowded, after that, unless there's

some other reason, we're going to take it off. We'll go through trial without it.

The court explained that as a visiting judge unfamiliar with the courtroom, he wanted to take precautions until he became familiar with how crowded the courtroom might be. There is nothing in the record to reflect that the trial court changed its decision to use the restraint only during voir dire examination. Beyond the court's statements, as outlined above, the record contains no indication of when, if ever, the restraint was placed on Defendant, and when, if ever, the restraint was taken off Defendant.

In his sole point of error Defendant alleges that the trial judge abused his discretion in ordering use of the restraint, and that such abuse deprived him of a fair trial and of a presumption of innocence.

■ As this Court has previously stated: Among the most precious rights afforded an accused is the right to be tried before an impartial jury with the presumption of innocence fully intact and free of prejudice. Intimately interwoven into the foregoing rights is the proposition the no accused should ever be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of "exceptional circumstances" or a "manifest need" for such restraints. *Gammage v. State,* 630 S.W.2d 309, 313 (Tex. App.—San Antonio 1982, pet. ref'd) (citing *Gray v. State,* 99 Tex.Crim. 305, 268 S.W. 941 (App.1924) (op. on reh'g); *Rainey v. State,* 20 Tex.App. 455 (1886)). The "exceptional circumstances" and "manifest needs" that would justify physical restraint of a Defendant during trial, are where the Defendant poses a threat to himself or others, has interfered with court proceedings, or has attempted to escape. *Gammage v. State,* 630 S.W.2d at 314.

■ On appeal we must determine if the trial court abused his discretion in ordering the Defendant restrained. *See Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Morris v. State,* 382 S.W.2d 259, 261 (Tex.Crim.App.1964). A decision to have a Defendant restrained is "subject to the closest scrutiny and review by the

appellate court." *Gray v. State,* 268 S.W. at 949. There is no indication in the record that Defendant was a flight risk or a threat to anyone. There was no indication that he would disrupt the court's proceedings. Absent "justifiable reasons appearing in the record, the trial court may not resort to physical restraints solely because of the character of the crime charged." *Gammage v. State,* 630 S.W.2d at 315. The only reasons provided in the record are sheriff department policy based on Defendant's prior sentences, and the trial judge's unfamiliarity with the courtroom. While these concerns are understandable, they are not enough to justify use of the restraint when other measures could have been used, such as having one of the two deputies stand in the back of the courtroom, or requesting an additional deputy. In the present case, Deputy Spaulding testified that he had been with Defendant throughout another trial and he had no knowledge that Defendant had ever done anything that would justify restraints. Based on the record before us and on the law's repugnance for use of restraints, we find that the trial court abused his discretion in ordering use of the physical leg restraint on Defendant.

■ This Court must reverse the trial court's judgment unless it finds beyond a reasonable doubt that the trial court's error made no contribution to the conviction or to the punishment. Tex.R.App.P. 81(b)(2). In applying the harmless error rule, the reviewing court:

> should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Harris v. State,* 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989); *see also Higginbotham v. State,* 807 S.W.2d 732, 734–35 (Tex.Crim.App. 1991). The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal. Tex.R.App.P. 50(d).

■ Courts have identified three ways a Defendant can be harmed by restraints. First, is the prejudice a jury naturally feels from the inference that the court has already decided that the Defendant is not only guilty, but also dangerous and untrustworthy. *Illinois v. Allen,* 397 U.S. at 344, 90 S.Ct. at 1061; *Mouton v. State,* 155 Tex.Crim. 450, 235 S.W.2d 645 (App.1950). Less overt, but just as harmful, is the interference that a physical restraint causes with a Defendant's thought processes, the use of his mental faculties, and his ability to communicate with counsel during trial. *Illinois v. Allen,* 397 U.S. at 344, 90 S.Ct. at 1061; *Rainey v. State,* 20 Tex.App. 455. Third, physical restraints are an affront to the court and its proceedings. *Illinois v. Allen,* 397 U.S. at 344, 90 S.Ct. at 1061; *Gammage v. State,* 630 S.W.2d at 313. Defendant argues that he suffered all three types of harm in varying degrees during trial.

The first type of harm associated with use of restraints—jury bias—occurs when the jury sees the restraints imposed on the Defendant. *See, e.g., Moore v. State,* 535 S.W.2d 357, 358 (Tex.Crim.App.1976) (Defendant escorted into courtroom wearing handcuffs in full view of jury); *Thompson v. State,* 514 S.W.2d 275, 278 (Tex.Crim.App. 1974) (Defendant wore handcuffs and jail uniform while testifying); *Walthall v. State,* 505 S.W.2d 898, 899 (Tex.Crim.App.1974) (Defendant handcuffed and bound by chain around waist while before jury). The record before us fails to reflect that the jury felt any prejudice toward Defendant or inferred that he was guilty, because the record does not show that the jury was ever made aware that Defendant was in fact restrained. It is uncontroverted that the leg brace was worn under Defendant's pants leg, and was not visible to the jury. Likewise, there is no indication that the use of an unobtrusive leg brace during jury voir dire (and possibly during the trial itself), in any way constituted an affront to the court and its proceedings. In this regard the instant case is distinguishable from *Long v. State,* upon which Defendant relies. In *Long,* a man was convicted of brutally killing three women with a hatchet. There was substantial evidence that the Defendant was extremely violent. Nevertheless, the court in *Long* ruled that trying the

Defendant in shackles was error because he had not been violent during any of the court proceedings. The court found that the error was harmless, however, because Long's tendency to be violent was not in issue and there was no evidence in the record that the jury saw the restraints. *Long v. State*, 823 S.W.2d 259, 281–83 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).

Defendant argues on appeal that his thought processes and ability to communicate with counsel were hindered by use of the leg brace. He contends that he could have pointed out an inconsistency in one of the complaining witness' statements had he not been distracted by the leg brace. This argument fails initially because Defendant has not shown that he was still wearing the leg brace when the complaining witness testified. Further, the record contains no indication that Defendant experienced any difficulties communicating with counsel, or that the trial court was ever made aware that use of the restraint affected Defendant's mental faculties in any way. It is Defendant's burden to bring forward a record sufficient to show reversible harm, and he has failed to do so. *See* TEX.R.APP.P. 50(d). Although Defendant has shown error in the trial court's ruling, the record shows beyond a reasonable doubt that the error made no contribution to either Defendant's conviction or his punishment. The judgment of the trial court is affirmed.