For the foregoing reasons, the judgment of the district court is AFFIRMED.

**Richard ANDRADE,
Petitioner-Appellant,**

v.

**O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.**

No. 86–2875.

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1986.

Eric G. Brown, Corpus Christi, Tex., for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

*On Request for Certificate of Probable Cause and Motion for Stay of Execution*

POLITZ, Circuit Judge:

Richard Andrade, a death-sentenced Texas prisoner, appeals the district court's rejection of federal habeas relief, 28 U.S.C. § 2254, requests a certificate of probable cause, and moves for a stay of the execution presently set for December 18, 1986. Finding no substantial showing of the denial of a federal right, we deny the requested certificate and the motion for a stay.

*History of Proceedings*

Andrade was indicted for the capital murder of Cordelia Mae Guevara on March 20, 1984 while attempting an aggravated sexual assault. He was found guilty of capital murder by a jury which subsequently affirmatively answered two special issues submitted pursuant to Tex.Code Crim. Proc.Ann. art. 37.071 (Vernon 1981). Andrade's conviction and death sentence were affirmed by the Texas Court of Criminal Appeals. *Andrade v. State,* 700 S.W.2d 585 (Tex.Crim.App.1985). The Supreme Court denied his petition for certiorari. *Andrade v. Texas,* — U.S. —, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986).

An application for a writ of habeas corpus was denied by the Texas Court of Criminal Appeals and the instant application was filed, urging the identical grounds previously presented to the state court. After reviewing the record, the district court denied habeas relief and vacated its earlier order staying Andrade's execution. The trial court then denied a requested certificate of probable cause stating that Andrade had "failed to make a substantial showing of the denial of a federal right." Andrade now seeks a certificate of probable cause and a stay of execution.

*Facts*

Near midday on March 20, 1984, the body of Cordelia Mae Guevara was found in a lounge she operated in Corpus Christi, Texas. Guevara's body lay in a pool of blood, her skirt was torn and pulled above her waist, her panties were removed, and her legs were spread and flexed. It appeared that the lounge had been in the process of being closed at the time of the offense, and the general scene reflected a struggle. The autopsy revealed at least 12 stab wounds to Guevara's heart, lungs, stomach, face, arms, and legs. The presence of prostatic acid phosphatase in her vagina indicated recent sexual activity. When found she had been dead for several hours.

Witnesses identified Andrade as the last person in the bar the night of the murder. A blue shirt found at the scene was identi-

fied by witnesses as the one worn by Andrade that night. Andrade's fingerprints were found on a beer can near the door and his palm-print was lifted from the jukebox. Blood on the shirt had the same characteristics as Guevara's blood, and hair found on the shirt matched her head and pubic hairs. Further testimony indicated that ink on the shirt was the same as ink in Guevara's broken pen found at the scene. Parenthetically we observe that Andrade did not testify during the guilt phase but in his testimony at the punishment phase he admitted the shirt was his and that he had worn it the night of the murder.

### Bases for Relief

Andrade alleged four grounds in his application for habeas corpus. He now states those four grounds, as the substantial federal issues he would raise on appeal, as follows:

1. Petitioner was denied his right to due process under the Fourteenth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment when the trial court refused to instruct the jury on the parole laws of the State of Texas during the punishment phase of the trial.

2. The Texas capital sentencing scheme violates a defendant's right to due process under the Fourteenth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment because it does not allow the jury the option of assessing a penalty of life imprisonment without the possibility of parole.

3. Petitioner was denied his Sixth and Fourteenth Amendment right to confront and cross-examine witnesses against him when the trial court admitted the report of an expert witness who was not present at trial and unavailable for cross examination.

4. The death penalty was improperly imposed in Petitioner's case in violation of the Eighth and Fourteenth Amendments because Article 37.071 of the Texas Code of Criminal Proce-

dure mandates that all three special issues be submitted to the jury during the punishment phase of the trial, but only two were submitted in Petitioner's case.

The district court considered each of these contentions and found all without merit.

### Analysis

In the landmark decision of *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), the Supreme Court declared: "We agree with the weight of opinion in the Courts of Appeals that a certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" The Court quoted with approval *Stewart v. Beto,* 454 F.2d 268, 270 (5th Cir.1971). Before we may issue the requested certificate of probable cause, we must be persuaded that Andrade has made a substantial demonstration of the denial of a federal right.

1. Failure to instruct jury on parole law.

■ During the punishment phase deliberations, the jury asked if Andrade would be eligible for parole if he received a life sentence. Andrade asked the court to instruct the jury that one convicted of capital murder would not be eligible for parole until after serving 20 years. The court declined to answer the inquiry.

In *O'Bryan v. Estelle,* 714 F.2d 365, 388 (5th Cir.1983), we noted that "[u]nder Texas law, a jury may not consider the possibility of parole in its deliberation on punishment," *citing Moore v. State,* 535 S.W.2d 357 (Tex.Crim.App.1976) (*rev'd on other grounds* in *Sneed v. State,* 670 S.W.2d 262 (Tex.Crim.App.1984) (reaffirming the parole consideration rule). Andrade's contention that the refusal to instruct a jury on the law of parole amounts to a constitutional violation was rejected by this court in *O'Bryan.* Therein, relying on the teachings of *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), we stated: "[W]e cannot say that an instruction on parole is constitutionally mandated

in a capital case." 714 F.2d at 389. Under this circuit's jurisprudence, there is no merit to Andrade's first claim.

### 2. The Texas capital sentencing scheme.

Andrade claims that the Texas sentencing scheme is constitutionally infirm because Texas does not provide a sentence of life without benefit of parole as a sentencing option in a capital murder case. He maintained that because of the absence of this possible sentence, the death penalty is unevenly applied in Texas. In support of this allegation he offered nothing more than speculation. His request for an evidentiary hearing on this issue was denied by the district court for failing to present "specific, non-conclusory allegations justifying issuance of the writ," *quoting Prejean v. Maggio,* 765 F.2d 482, 486–87 (5th Cir.1985).

■■■ The Texas capital punishment statute passed constitutional muster in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The punishment to be assessed for the offense of capital murder, as for all other state criminal offenses, is a matter for the state legislature. Neither the eighth amendment nor any other provision of the Constitution mandates the enactment of a particular punishment for a particular crime. That determination is left to the exercise of judgment by each "democratically elected legislature." *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). *See Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). The Texas legislature has established two punishments for capital murder, death and life imprisonment. Neither sentence is constitutionally disproportionate and a constitutional sentencing scheme does not require the establishment of the third sentencing option advanced by Andrade. This contention is devoid of merit.

### 3. Admission into evidence of absent expert's report.

Andrade next contends that the trial court erred in admitting into evidence the report of a chemist who compared ink-stains on the shirt found at the scene with

ink in a ballpoint pen also found there. During the testimony of one FBI agent, the prosecutor developed that the shirt and the pen had been turned over to an FBI chemist for examination. The chemist was unavailable during Andrade's trial because he was then a witness in a trial in Alaska. Andrade objected to the introduction of the chemist's report through the other agent because, *inter alia,* he was thus denied his rights of confrontation and cross-examination. The objection was overruled and the agent read from the report of the chemist that there was no chemical difference between the ink on the shirt and that in the pen.

On cross-examination Andrade's counsel had the opportunity to cast doubt on the conclusion in the chemist's report. Counsel drew concessions from the testifying agent that that agent did not know: (1) the manufacturer of the pen; (2) the tests that were performed; (3) the number of companies that used similar ink in their pens; (4) the number of pens in the city of Corpus Christi using this ink; and (5) whether the ink stains on the shirt were made by the pen found at the scene.

■■■ In reviewing state court evidentiary rulings, the federal habeas court's role "is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness." *Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985). In *Mattheson* we further held that " 'the erroneous admission of prejudicial testimony justifies habeas corpus relief only when it is "material in the sense of [being a] crucial, critical, highly significant factor." ' " *Id.; quoting Bailey v. Procunier,* 744 F.2d 1166 (5th Cir.1984), and *Skillern v. Estelle,* 720 F.2d 839 (5th Cir.1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). Assuming error in the evidentiary ruling permitting the introduction of the chemist's report, we are persuaded beyond peradventure that in the manner given, and in light of the cross-examination, that the error did not carry such prejudice as would warrant the issuance of the Great Writ. Any such

error appropriately would be classified as the harmless error envisioned by the Supreme Court in *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and its progeny, up to *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The latter case teaches that in assessing harmlessness, we are to look to such factors as: the importance of the testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of corroborating or contradicting evidence; the extent of cross-examination permitted; and the overall strength of the prosecution's case. *Delaware v. Van Arsdall,* —— U.S. at ——, 106 S.Ct. at 1438. Doing so, we find the evidence against Andrade overwhelming and the challenged testimony very minor. If its admission was error, it was plainly harmless error beyond a reasonable doubt.

4. Failure to submit the third special issue.

Andrade maintains that constitutional error resulted from the state trial court's failure to submit the third special issue prescribed by Tex.Code Crim.Proc.Ann. art. 37.071. At the time of Andrade's trial this article provided:

> On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

There was neither constitutional error nor error in the trial court's refusal to present this special issue. By the express language of the statute this issue is to be posed to the jury only if provocation is raised by the evidence. Under Texas law, to raise provocation "it is necessary that there be evidence of the deceased's conduct just prior to his death; also, that evidence must be sufficient to be considered provocation." *Hernandez v. State,* 643 S.W.2d 397, 401 (Tex.Crim.App.1983), *cert. denied,*

462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983). The record contains no such evidence; Andrade suggests none. This contention also lacks merit.

Concluding that Andrade has failed to demonstrate "that the issues [he advances] are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further,'" *Barefoot v. Estelle,* 463 U.S. at 893, 103 S.Ct. at 3394, 77 L.Ed.2d at 1104, n. 4 (citations omitted), we agree with the district court that he has failed to make a substantial showing of the denial of a federal right. Accordingly, his request for a certificate of probable cause must be and the same is DENIED and the district court's judgment stands affirmed. The motion for a stay of execution is likewise DENIED.