Opinion filed February 14, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed February 14,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                       Nos. 11-06-00163-CR & 11-06-00164-CR

                                                     __________

 

                              MIGUEL
ANGEL CEDILLOS, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                        On
Appeal from the 182nd District Court

                                                          Harris
County, Texas

                                        Trial
Court Cause Nos. 977389 & 977390

 



 

                                                                   O
P I N I O N

Miguel
Angel Cedillos was indicted for aggravated sexual assault of a child and
indecency with a child.  Appellant pleaded not guilty to both charges and
proceeded to a joint jury trial.  The jury found him guilty in both cases and
assessed his punishment at twenty-two years confinement in the Institutional
Division of the Texas Department of Criminal Justice for the aggravated sexual
assault and ten years confinement in the Institutional Division of the Texas
Department of Criminal Justice for the indecency with a child.  The State moved
to have the sentences run consecutively.  The trial court, however, ordered
them to run concurrently.  We affirm.

Issues
on Appeal








Appellant
asserts that he was denied his due process rights under the Fourteenth
Amendment of the United States Constitution because he was shackled during voir
dire and throughout the trial.  Next, appellant asserts that the trial court
erred in admitting his oral statement.  Finally, appellant asserts that trial
counsel failed to provide effective assistance of counsel as required by the
Sixth Amendment to the United States Constitution.

Due
Process

Appellant
argues in his first issue that he was denied his Fourteenth Amendment due
process rights because he was shackled during voir dire and throughout the
trial.  The State responds that he waived this issue by not objecting at
trial.  The record contains two references to appellant being shackled.  During
voir dire, one of the venirepersons commented on appellant=s shackles, stating: AIf he=s presumed innocent, why is
he wearing shackles?@ 
The second reference occurred during the punishment phase.  Before appellant
took the stand and outside the jury=s
presence, the trial court said: ALet=s take the shackles off so
we don=t have to take
the jury out when he=s
finished.@  Appellant
did not object on the record to the use of shackles, and the record does not
indicate why he was restrained.

 The
Fifth and Fourteenth Amendments of the United States Constitution prohibit the
use of physical restraints visible to the jury unless the trial court in its
discretion finds that they are justified by an essential state=s interest such as physical
security, escape prevention, or courtroom decorum.  Deck v. Missouri,
544 U.S. 622, 628 (2005).  Courts have held that some circumstances justify the
use of restraints during trial, including situations where an accused expressed
his intention to escape,  made threats of physical violence, resisted being
brought to court, repeatedly interrupted the court proceedings, attempted to
leave the courtroom, or engaged in other egregious conduct.[1]
When an appellant complains of the use of shackles, we first determine if the
trial court abused its discretion by allowing appellant to be shackled.  If so,
we  then determine whether appellant suffered harm as a result.  Long v.
State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991).  








Appellant
acknowledges the lack of an objection but relies upon Shaw for the
proposition that no objection was required because the trial court had an
affirmative duty to indicate on the record why appellant was shackled.  Shaw
v. State, 846 S.W.2.d 482 (Tex. App.CHouston
[14th Dist.] 1993, pet. ref=d). 
In Shaw, the jury found the defendant guilty of burglary of a building. 
The defendant elected to have the jury assess punishment.  The trial court
conducted a punishment hearing, and shortly before the start of closing
argument, the defendant requested permission to speak on his own behalf.  The
trial court denied his request.  During the State=s
closing, the defendant spoke to his counsel in a loud voice.  The trial court
excused the jury and warned the defendant that he would be restrained if he did
not conduct himself as a gentleman.  The defendant continued arguing with the
trial court, and it ordered him gagged with duct tape and bound.  Id. at
485-86.

The
issue on appeal was whether this restraint was appropriate.  The court=s opinion contains no
indication that the preservation of this issue was in question or how the
challenge was preserved.  Appellant argues that Shaw holds that no
objection is necessary because of the opinion=s
statement that a defendant cannot be physically restrained in the jury=s presence Aunless there is a showing
of >exceptional
circumstances= or a >manifest need= for such restraints.@  Id. at 486. 

There
is an important distinction between Shaw and this case.  In Shaw,
the restraint order was issued during the trial.  The appellate court had the
full benefit of the events leading up to the restraint order and, thus, was
able to assess the propriety of that decision.  The court reversed B not because of what the
trial court said or did not say B
but because the record as a whole did not Apresent
any extreme conduct on [defendant=s]
part that warrants the use of physical restraints in the jury=s presence.@  Id. at 487.  We do
not know when the trial court ordered appellant restrained, except that we know
it occurred before trial.  We do not know why the trial court issued the order,
nor do we know what comments or findings were made in connection with that
order.  We believe that the Shaw court correctly held that the trial
court=s restraint
order must be appropriate at the time it is made, but we do not read it to
impose a broader affirmative duty to make findings on the record during the
course of a trial when the restraint order predates the beginning of trial.








The
general rule is that the appealing party has the burden to present a record
showing properly preserved, reversible error.  See Word v. State, 206
S.W.3d 646, 651-52 (Tex. Crim. App. 2006).  This is unaltered by the presence
of a constitutional claim.  In Peretz v. United States, 501 U.S. 923,
936 (1991), the Court held that most basic rights of criminal defendants are
subject to waiver.[2]  We believe
that the same holds true here.  Because appellant did not object on the record
to the use of restraints in the jury=s
presence, the issue is waived, and appellant=s
first issue is overruled.

Admission
of Oral Statement

In
appellant=s second
issue, he asserts that the trial court erred in allowing his oral statement to
be entered into evidence. Officer Russell Ackley testified that he took an oral
statement from appellant.  Appellant filed a motion to suppress the statement,
and the trial court held a hearing outside the presence of the jury regarding
its admissibility.  At this hearing, Officer Ackley testified that he called
appellant and asked him to come into the station to discuss the case. 
Appellant agreed to come in and talk to Officer Ackley.  Appellant drove
himself to meet with Officer Ackley the next day.  Officer Ackley testified
that he explained to appellant that he was free to leave at any time. Officer
Ackley also said that he showed appellant the exits.  He further testified that
he gave appellant his Miranda[3] warnings. 
Appellant agreed only to give an oral statement; he would not provide a written
statement.








Officer
Ackley testified that appellant told him, AI
did it.  You know I did it.  But I don=t
want to call my daughter a liar.@ 
Officer Ackley testified that their conversation lasted twenty to thirty
minutes at the most.  He further testified that appellant never indicated that
he wanted to terminate the interview.  He said that, when the interview was
concluded, he showed appellant the door.  Officer Ackley testified that he told
appellant he would discuss the case with the district attorney=s office and then would let
him know the status.  Officer Ackley testified that, during the interview,
appellant was free to leave and that appellant was not restrained in any way. 
Appellant was not arrested until nearly a year and one-half later.  At the
hearing, appellant argued that the statement was inadmissible because it was
not recorded or memorialized in any way in violation of Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).  The
trial court overruled the objection and allowed testimony regarding appellant=s oral statement.

We
review the trial court=s
admission of evidence under an abuse of discretion standard.  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  We will uphold the trial
court=s ruling if it
is within the zone of reasonable disagreement.  Id.  The State may not
use the defendant=s
statements when they stem from custodial interrogation without demonstrating
the use of procedural safeguards effective to secure the privilege against
self-incrimination.  Garcia v. State, 237 S.W.3d 833, 836 (Tex. App.CAmarillo 2007, no pet.)
(citing Miranda, 384 U.S. at 444).  These procedural safeguards are set
out in Article 38.22, section 3(a):

No
oral or sign language statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding
unless:

 

(1)
an electronic recording, which may include motion picture, video tape, or other
visual recording, is made of the statement;

 

(2)
prior to the statement but during the recording the accused is given the
warning in Subsection (a) of Section 2 above and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warning;

 

(3)
the recording device was capable of making an accurate recording, the operator
was competent, and the recording is accurate and has not been altered;

 

(4)
all voices on the recording are identified;  and

 

(5)
not later than the 20th day before the date of the proceeding, the attorney
representing the defendant is provided with a true, complete, and accurate copy
of all recordings of the defendant made under this article.[4]








 

During
oral argument, appellant=s
counsel asserted that the police officer=s
conduct was designed to circumvent Article 38.22 by making the questioning
appear to be part of an investigation when it was really a custodial
interrogation.  The Texas Court of Criminal Appeals has construed Acustodial interrogation@ consistently with the
meaning under the Fifth Amendment to the United States Constitution.  Wicker
v. State, 740 S.W.2d 779, 785 (Tex. Crim. App. 1987).  The United States
Supreme Court has defined custodial interrogation as Aquestioning initiated by law enforcement
officers after a person has been taken into custody or otherwise deprived of
his freedom of action in any significant way.@ 
Miranda, 384 U.S. at 444.  The determination of custody is made on a
case-by-case basis after considering all of the objective circumstances.  Dowthitt
v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).  A suspect is Ain custody@ for Miranda
purposes when placed under formal arrest or when a reasonable person in the
suspect=s position
would have understood the situation to constitute a restraint on freedom of
movement of the degree that the law associates with formal arrest.  United
States v. Bengivenga, 845 F.2d 593, 596 (5th Cir. 1988).

The
Court of Criminal Appeals has outlined four general circumstances that would
constitute custody:  (1) when the suspect is physically deprived of his freedom
of action in any significant way; (2) when a law enforcement officer tells the
suspect that he cannot leave; (3) when law enforcement officers create a
situation that would lead a reasonable person to believe that his freedom of
movement has been significantly restricted; and (4) when there is probable
cause to arrest and law enforcement officers do not tell the suspect that he is
free to leave.  Dowthitt, 931 S.W.2d at 255.  Appellant contends that
the interrogation was custodial because he was alone at the police station in a
back room and was confronted by a hostile witness.








The
mere fact that the investigation took place in a police station does not make
it custodial.  In California v. Beheler, 463 U.S. 1121 (1983), the
defendant voluntarily accompanied the police to the station house, talked for
less than thirty minutes, and was permitted to return home.  The Court held
that the interview was not custodial.  Likewise, in Oregon v. Mathiason,
429 U.S. 492 (1977), the defendant came voluntarily to the police station, was
informed he was not under arrest, participated in a thirty-minute interview,
and left the police station without hindrance.  The Court held that interview
to be noncustodial as well.

Appellant
next argues that, because he was the sole suspect and the police had probable
cause to believe that he had committed a crime, the only purpose of the
interview was to potentially incriminate him.  However, being the focus of the
investigation does not equate to custody.  Meek v. State, 790 S.W.2d
618, 621 (Tex. Crim. App. 1990) (citing Beckwith v. United States, 425
U.S. 341 (1976)).  Nor does custody arise just because the questioning took
place in a coercive environment. In Mathiason, 429 U.S. at 495, the
Court stated:

Any
interview of one suspected of a crime by a police officer will have coercive
aspects to it, simply by virtue of the fact that the police officer is part of
a law enforcement system which may ultimately cause the suspect to be charged
with a crime.

As
noted, the issue is whether the trial court abused its discretion.  There was
evidence from which the trial court could have concluded that the interview was
a custodial interrogation; however, because there was evidence that appellant
was informed that he was not under arrest, that he received his Miranda
warnings, that he was told that he could terminate the interview, and that he
was allowed to leave after a twenty- to thirty-minute interview, the trial
court did not abuse its discretion by determining that it was not a custodial
interrogation.  We are mindful of counsel=s
concern that police officers may sometimes attempt to circumvent Article 38.22,
but the resolution of that issue is factually dependent and requires a
credibility assessment.  We cannot say that in this instance the trial court
erred when making that assessment.

Appellant
further argues that, because the statement was unrecorded, the jury had to rely
solely on the testimony of the officer who interviewed appellant.  The fact
that the officer=s
testimony was the only evidence the jury heard regarding the statement goes to
the weight and credibility of the evidence.  The jury is the exclusive judge of
the credibility of witnesses and of the weight to be given their testimony.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).








The
trial court did not abuse its discretion by admitting appellant=s oral statement. 
Appellant=s second
issue is overruled.

Ineffective
Assistance of Counsel 

Appellant
asserts in his third issue that he received ineffective assistance of counsel. 
To prevail on a claim of ineffective assistance of counsel, an appellant must
establish that his lawyer=s
performance fell below an objective standard of reasonableness and that there
is a Areasonable
probability@ the
result of the proceeding would have been different but for counsel=s deficient performance.  Strickland
v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65
S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the trial.  Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  The purpose of this
two-pronged test is to judge whether counsel=s
conduct so compromised the proper functioning of the adversarial process that
the trial cannot be said to have produced a reliable result.  Thompson v.
State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The
review of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a
wide range of reasonable professional assistance.  Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Appellant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Jackson v. State, 877 S.W.2d 768 (Tex.
Crim. App. 1994); Hayden v. State, 155 S.W.3d 640, 648 (Tex. App.CEastland 2005, pet. ref=d).  To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.@ 
Thompson, 9 S.W.3d at 814 (quoting McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996)).

First,
appellant argues that his trial counsel was ineffective because he did not make
a motion for the appointment of an investigator even though his client was
charged with a serious first-degree felony, punishable by life in prison. 
Additionally, he asserts that his trial counsel was ineffective because, even
though his trial counsel knew that DNA would be an issue, his trial counsel did
not request the appointment of a DNA expert.  Appellant also asserts that his
trial counsel was ineffective because he did not request a psychologist to
testify or advise counsel regarding child victims lying about allegations of
abuse.








Appellant=s contentions are not
supported by the record.  Generally, the record on direct appeal will not be
sufficient to show that trial counsel=s
representation was so lacking as to overcome the presumption that counsel=s conduct was reasonable.  Bone
v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  This case is no
different.  There could be countless reasons for counsel=s actions.  Appellant faced serious felony
charges, but the facts of the case were not so complicated that an investigator
or expert would have necessarily been needed.  Appellant was the only suspect. 
The case turned primarily on credibility.  We have reviewed the entire record
and note that counsel was able to attack during cross-examination the
credibility of the State=s
DNA expert, the child victim, and the outcry witness.  Consequently, we cannot
say based upon this record that the decision to prepare for trial without the
use of an investigator or DNA expert necessarily falls below an objective
standard of reasonableness.

Even
if we were of the opinion that counsel should have requested an investigator or
expert and were to assume that one would have been appointed, we cannot
determine if the failure to do so was harmful because there is nothing in the
record to show what evidence, if any, an investigator or expert would have
provided or helped develop.  Without this, we cannot conclude that their
presence would have changed the outcome of the trial.    

Next,
appellant asserts that his trial counsel was ineffective for failing to object
to his being shackled or for failing to move for a mistrial in response to the
veniremember=s
comments about appellant=s
restraints.  As explained above, the record does not demonstrate why appellant
was shackled.  Because we do not know why appellant was restrained, we cannot
say that an objection or motion for mistrial would have been successful.  While
we do not condone the lack of an objection or motion, this prevents us from
concluding that either would have changed the trial=s outcome.








Finally,
appellant asserts that his trial counsel was ineffective during the punishment
phase  by failing to call any friends or family members to provide mitigating
evidence, by failing to call a probation officer to testify as to the programs
available to monitor and treat or prevent recidivism in sex offenders, and by
failing to have a psychologist testify regarding the treatment of sex
offenders.  The record does not overcome the presumption that appellant=s trial counsel acted
reasonably during the punishment phase of trial because it is silent as to
whether anyone would have testified on appellant=s
behalf or what they would have said on direct B
or more importantly on cross-examination.  Appellant testified at the punishment
phase of the trial, but he never admitted guilt.  Therefore, having a
psychologist or probation officer discuss treatment for sex offenders would not
have benefitted him.  We cannot say, therefore, that trial counsel=s actions during the
punishment phase were not sound trial strategy or that other conduct would have
changed the trial=s
outcome.

The
record before us demonstrates that trial counsel presented a solid defense. 
Appellant has failed to rebut the presumption that his trial counsel=s actions were reasonable
or to establish harm.  Therefore, appellant has not shown that he received
ineffective assistance of counsel.  We overrule appellant=s third issue on appeal.

Conclusion

We
affirm the trial court=s
judgments.

 

 

RICK STRANGE

JUSTICE

 

February 14,
2008

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]See, e.g., Kimithi v. State, 546 S.W.2d 323 (Tex. Crim. App. 1977); Moore v.
State, 535 S.W.2d 357 (Tex. Crim. App. 1976); Morris v. State, 382
S.W.2d 259 (Tex. Crim. App. 1964); Shaw v. State, 846 S.W.2d 482 (Tex.
App.CHouston [14th Dist.] 1993, pet. ref=d); Burks v. State, 792 S.W.2d 835 (Tex. App.CHouston [1st Dist.] 1990, pet. ref=d).





[2]The Court cited the following cases in support of the
proposition:  United States v. Gagnon, 470 U.S. 522, 528 (1985) (absence
of objection constitutes waiver of right to be present at all stages of
criminal trial); Levine v. United States, 362 U.S. 610, 619 (1960)
(failure to object to closing of courtroom is waiver of right to public trial);
Segurola v. United States, 275 U.S. 106, 111 (1927) (failure to object
constitutes waiver of Fourth Amendment right against unlawful search and
seizure); United States v. Figueroa, 818 F.2d 1020, 1025 (1st Cir. 1987)
(failure to object results in forfeiture of claim of unlawful post-arrest
delay); United States v. Bascaro, 742 F.2d 1335, 1365 (11th Cir. 1984)
(absence of objection is waiver of double-jeopardy defense); United States
v. Coleman, 707 F.2d 374, 376 (9th Cir. 1983) (failure to object
constitutes waiver of Fifth Amendment claim). 





[3]Miranda v. Arizona, 384 U.S. 436 (1966).





[4]Article 38.22, section 2(a) provides:

 

[T]he accused, prior to making the statement, either
received from a magistrate the warning provided in Article 15.17 of this code
or received from the person to whom the statement is made a warning that:

 

(1) he has the right to remain silent and not make any
statement at all and that any statement he makes may be used against him at his
trial;

 

(2) any statement he makes may be used as evidence
against him in court;

 

FOOTNOTE NO. 4 CONTINUED:

 

(3) he has the right to have a lawyer present to advise
him prior to and during any questioning;

 

(4) if he is unable to employ a lawyer, he has the
right to have a lawyer appointed to advise him prior to and during any
questioning;  and

 

(5) he has the right to terminate the interview at any time.